## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. H-21-272-S** |
| | § | |
| **OCTAVIAN OCASIO** | § | |

## PLEA AGREEMENT

The United States of America, by and through Jennifer B. Lowery, United States Attorney for the Southern District of Texas, and Belinda Beek and Adam Goldman, Assistant United States Attorneys, and the Defendant, **OCTAVIAN OCASIO (OCASIO)**, and the Defendant's counsel, Cordt Akers, pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### The Defendant's Agreement

1.     Defendant agrees to plead guilty to Count One of the Superseding Indictment.   Count One charges Defendant with conspiracy to commit wire fraud in violation of Title 18, United States Code, Section 1349.   Defendant and the United States agree that the loss from Defendant's criminal conduct in this scheme was Three Hundred Twenty-Four Thousand Six Hundred Dollars ($324,600).

1

Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the Superseding Indictment or proved to a jury or judge beyond a reasonable doubt.

### Punishment Range

2.      The **statutory** maximum penalty for each violation of Title 18, United States Code, Section 1349 is imprisonment of not more than twenty (20) years and a fine of not more than $250,000.   Additionally, Defendant may receive a term of supervised release after imprisonment of up to three (3) years.   *See* Title 18, United States Code, Sections 3559(a)(3) and 3583(b)(2).   Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for the entire term of supervised release without credit for time already served on the term of supervised release prior to such violation.   *See* Title 18, United States Code, Section 3559(a)(3) and 3583(e)(3).   Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

### Mandatory Special Assessment

3.      Pursuant to Title 18, United States Code, Section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States

District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Immigration Consequences

4. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty.

## Cooperation

5. The parties understand this agreement carries NO potential for a motion for departure under Section 5K1.1 of the Sentencing Guidelines.

## Waiver of Appeal and Collateral Review

6. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a Defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United

3

States Code, Section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final.    Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, Section 2255.    In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

7.    In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court.    Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States, or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office, or the Court.    The United States does not make any promise or representation concerning what sentence Defendant will receive.    Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court.    *See United States v. Booker*, 543 U.S. 220 (2005).

4

Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

8.    Defendant understands and agrees that each and all waivers contained in the agreement are made in exchange for the concessions made by the United States in this plea agreement.

## United States' Agreements

9.    The United States agrees to each of the following:

(a)    Should Defendant accept responsibility as contemplated by the Sentencing Guidelines, the United States agrees not to oppose Defendant's anticipated request to the Court that he receive a two (2) level downward adjustment pursuant to Section 3E1.1(a) of the United States Sentencing Guidelines.  **If, however, Defendant engages in conduct or otherwise acts in a manner inconsistent with acceptance of responsibility, or if the Pre-Sentence Investigation Report does not make a finding of acceptance of responsibility and does not make a recommendation for a downward adjustment for acceptance of responsibility, the United States is not obligated to recommend or to refrain from opposing a downward adjustment for acceptance of responsibility.**

(b)    If Defendant qualifies for an adjustment under Section 3E1.1(a) of the United States Sentencing Guidelines with the offense level determined prior to the operation of 3E1.1(a) being level 16 or greater, and the Defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court

5

to allocate resources efficiently, and by providing complete information regarding his role in the offense, the United States agrees to request an additional one-level downward adjustment.

(c)     The United States agrees to dismiss the Indictment and counts 10-22 of the Superseding Indictment after Defendant has been sentenced.

**Agreement Binding - Southern District of Texas Only**

10.     The United States agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for (1) offenses arising from conduct that is the basis of the charges in the Superseding Indictment This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant.   It does not bind any other United States Attorney or any other unit of the Department of Justice.   The United States will bring this plea agreement and the full extent of Defendant's cooperation, if any, to the attention of other prosecuting offices if requested.   Further, if defendant is charged with any substantive offenses outside the Southern District of Texas arising from the same operative facts that are the basis of this plea agreement and those offenses are not barred by double jeopardy, the United States agrees that it will run any sentence imposed in the Southern District of Texas concurrently with any sentence outside the Southern District of Texas.

**United States' Non-Waiver of Appeal**

11.     The United States reserves the right to carry out its responsibilities under the Sentencing Guidelines.   Specifically, the United States reserves the right:

6

(a)     to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b)     to set forth or dispute sentencing factors or facts material to sentencing;

(c)     to seek resolution of such factors or facts in conference with the Defendant's counsel and the Probation Office;

(d)     to file a pleading relating to these issues, in accordance with Section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, Section 3553(a); and

(a)     to appeal the sentence imposed or the manner in which it was determined.

## Sentence Determination

12.     Defendant is aware that his sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553.   Defendant nonetheless acknowledges and agrees that the Court has the authority to impose any sentence up to and including the statutory maximum set for the offense to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines.   Defendant understands and agrees the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge.

7

If the Court should impose any sentence up to the maximum established by statute or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

### Rights at Trial

13.    Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement.   Defendant understands that the rights of a Defendant include the following:

(a)    If Defendant persisted in a plea of not guilty to the charges, Defendant would have the right to a speedy jury trial with the assistance of counsel.   The trial could be conducted by a judge sitting without a jury if Defendant, the United States, and the Court all agreed.

(b)    At a trial, the United States would be required to present witnesses and other evidence against Defendant.   Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them.   In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf.   If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court.

(c)    At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify.   However, if Defendant desired to do so, he could testify on his own behalf.

### Factual Basis for Guilty Plea

14.    Defendant is pleading guilty because he is guilty of the charges

8

contained in Count One of the Superseding Indictment.   If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt.   Defendant understands and agrees that the following facts, **among others,** would be offered to establish Defendant's guilt:

(1)   Defendant **OCTAVIAN OCASIO (OCASIO)** resided in the state of New York.   His co-conspirators resided in the Southern District of Texas.

(2)   **OCASIO** engaged in a conspiracy to buy and sell thousands of fraudulently issued Texas temporary buyer tags ("buyer tags") for cars outside of Texas without selling any cars: i.e., **OCASIO** and his co-conspirators were merely selling buyer tags and used the internet to buy and sell the fraudulent tags and to exchange proceeds from the illegal tag sales.

(3)   **OCASIO** and his co-conspirators used accounts such as Gmail, Instagram, and Facebook to communicate with each other and to deliver fraudulently obtained Texas buyer tags to purchasers all over the United States, including New York, Florida, and Washington, D.C.

(4)   **OCASIO** and his co-conspirators accomplished the purpose of the conspiracy by, among other things, advertising the sale of Texas buyer tags on social media platforms like Facebook and Instagram, using email to communicate with each other and to deliver fraudulently obtained Texas buyer tags, and to

9

receive and share fraud proceeds from the fraudulent sale of Texas buyer tags via electronic payment services like Cash App and Zelle.

(5)     In Texas, car dealers are required to file a Motor Vehicle Inventory Tax Statement (VIT) at both the county tax office and appraisal district where the dealership is located.   If no sales are made, the dealer must still file the form reporting zero sales.

(6)     In Texas, car dealers are responsible for ensuring that vehicles are inspected within 180 days of sale.

(7)     L.C.S. Auto Sales was a fraudulent and fictitious used car dealer that had a GDN license.   During the time L.C.S. Auto Sales held a GDN license from approximately February 2020 until it was shut down by the TxDMV in July 2020, more than 18,000 Texas buyer tags were issued from its webDealer account. L.C.S. Auto Sales never reported a car sale on a VIT.

(8)     McKenna of Houston LLC was a fraudulent and fictitious used car dealer that held a GDN license.   During the time McKenna of Houston LLC held a GDN license from approximately June 2020 until it was shut down by the TxDMV in September 2020, more than 28,900 Texas buyer tags were issued from its webDealer account.   McKenna of Houston LLC never reported a car sale on a VIT.

10

(9)   Texas Motor Company was a fraudulent and fictitious used car dealer that a co-defendant opened using the identity and social security number of someone other than himself.   During the time Texas Motor Company held a GDN license from approximately July 2019 until it was shut down by the TxDMV in December 2020, more than 430,000 Texas buyer tags were issued from its webDealer account.

(10)   To achieve the purpose of the conspiracy, **OCASIO** and his co-conspirators, in the Southern District of Texas and elsewhere, committed and caused to be committed the following acts in furtherance of the conspiracy:

- On or about April 23, 2020, a co-defendant LH sent, or caused to be sent, an email to co-conspirator AB attaching a PDF of a Texas buyer's tag along with the buyer and dealer receipts for a vehicle with a VIN ending in "5406."   The seller was listed as L.C.S. Auto Sales and issued to a buyer whose initials are "JK" with a zip code in Queens, NY.

- On or about April 23, 2020, AB forwarded LH's email containing the PDF of a Texas buyer's tag along with the buyer and dealer receipts for a vehicle with a VIN ending in "5406" to **OCASIO**.

- On or about April 23, 2020, **OCASIO** received an email from Cash App advising that he had received a $175 payment from "JK" for "temporary

plates for bmw 2010 528i for JXXXX." TxDMV records show that this

buyer tag was issued via L.C.S. Auto Sales from the TxDMV eTag system.

The car was never inspected in Texas.

- On or about May 2, 2020, co-defendant LH sent, or caused to be sent, an email to co-conspirator AB attaching a PDF of a Texas buyer's tag along with the buyer and dealer receipts for a vehicle with a VIN ending in 6425. The seller was listed as L.C.S. Auto Sales issued to a buyer whose initials are "JG" with an address in Florida.

- On or about May 2, 2020, AB forwarded LH's email containing the PDF of a Texas buyer's tag along with the buyer and dealer receipts for a vehicle with a VIN ending in "6425" to **OCASIO**.

- On or about May 2, 2020, **OCASIO** received an email from Cash App advising that he had received a $175 payment from "JG" for "temp tag." TxDMV records show that this buyer tag was issued via L.C.S. Auto Sales from the TxDMV eTag system. The car was never inspected in Texas.

- On or about May 12, 2020, co-defendant LH sent, or caused to be sent, an email to co-conspirator AB attaching a PDF of a Texas buyer's tag along with the buyer and dealer receipts for a vehicle with a VIN ending in "1171" The seller was listed as L.C.S. Auto Sales issued to a buyer whose initials

12

are "TB" with an address in New York.

- On or about May 12, 2020, AB forwarded LH's email containing the PDF of a Texas buyer's tag along with the buyer and dealer receipts for a vehicle with a VIN ending in "1171" to **OCASIO**. TxDMV records confirm that this buyer tag was issued via L.C.S. Auto Sales from the TxDMV eTag system.

- On or about May 12, 2020, **OCASIO** received an email from Cash App advising that he had received a $175 payment from "TB" for "Registration and Tags." The car was never inspected in Texas.

- On or about June 9, 2020, co-defendant LH sent, or caused to be sent, an email to co-conspirator AB attaching a PDF of a Texas buyer's tag along with the buyer and dealer receipts for a vehicle with a VIN ending in "7134" The seller was listed as L.C.S. Auto Sales issued to a buyer whose initials are "JA" with an address in Washington, D.C. TxDMV records confirm that this buyer tag was issued via L.C.S. Auto Sales from the TxDMV eTag system.

- On or about June 9, 2020, AB forwarded or caused to be forwarded LH's email containing the PDF of a Texas buyer's tag along with the buyer and dealer receipts for a vehicle with a VIN ending in "7134" to **OCASIO**.

- On or about June 9, 2020, **OCASIO** received an email from Cash App advising that he had received a $150 payment from "JA" for "tag."   The car was never inspected in Texas.

- On or about June 10, 2020, co-conspirator AB sent, or caused to be sent, an email to **OCASIO** attaching a PDF of a Texas buyer's tag along with the buyer and dealer receipts for a vehicle with a VIN ending in "7700."   The seller was listed as McKenna of Houston LLC issued to a buyer whose initials are "QJ" with an address in New York.   TxDMV records confirm that this buyer tag was issued via McKenna of Houston LLC from the TxDMV eTag system.

- On or about June 10, 2020, **OCASIO** received an email from Cash App advising that he had received a $150 payment from "QJ" for "car plates." The car was never inspected in Texas.   McKenna of Houston LLC never reported a car sale on a VIT.

- On or about August 24, 2020, co-conspirator AB sent, or caused to be sent, an email to **OCASIO** attaching a PDF of a Texas buyer's tag along with the buyer and dealer receipts for a vehicle with a VIN ending in "5186."   The seller was listed as McKenna of Houston LLC issued to a buyer whose initials are "YC" with an address in New York.   TxDMV records confirm

14

that this buyer tag was issued via McKenna of Houston LLC from the

TxDMV eTag system.

- On or about August 24, 2020, **OCASIO** received an email from Cash App

  advising that he had received a $150 payment from "YC" for "yves temp

  tags." The car was never inspected in Texas.

- On or about September 23, 2020, co-conspirator AB sent, or caused to be

  sent, an email to **OCASIO** attaching a PDF of a Texas buyer's tag along

  with the buyer and dealer receipts for a vehicle with a VIN ending in

  "4059."   The seller was listed as Texas Motor Company issued to a buyer

  whose initials are "JS" with an address in New York.   TxDMV records

  confirm that this buyer tag was issued through Texas Motor Company from

  the TxDMV eTag system.

- On or about September 23, 2020, **OCASIO** received an email from Cash

  App advising that he had received a $175 payment from "JS" for "Temp

  License Plates service."   The car was never inspected in Texas.   Texas

  Motor Company never reported a car sale on a VIT.

- On or about September 30, 2020, **OCASIO** received an email from Cash

  App advising that he had received a $175 payment from a buyer whose

  initials are "CJ" for "2000 Nissan maxima se."

- On or about September 30, 2020, co-conspirator AB sent, or caused to be sent, an email to **OCASIO** attaching a PDF of a Texas buyer's tag along with the buyer and dealer receipts for a vehicle with a VIN ending in "2552."   The seller was listed as Texas Motor Company issued to a buyer whose initials are "CJ" with an address in New York.   TxDMV records confirm that this buyer tag was issued through Texas Motor Company from the TxDMV eTag system.   The car was never inspected in Texas.

- On or about October 4, 2020, **OCASIO** received an email from Cash App advising that he had received a $125 payment from "AL" for "TXXXX XXXXXX 2XXX BatXXXXXXX st Brooklyn ny 11229."

- On or about October 5, 2020, co-conspirator AB sent, or caused to be sent, an email to **OCASIO** attaching a PDF of a Texas buyer's tag along with the buyer and dealer receipts for a vehicle with a VIN ending in "4283."   The seller was listed as Texas Motor Company issued to a buyer whose initials are "TM" with an address in New York.

All in violation of Title 18, United States Code, Section 1349.

### Breach of Plea Agreement

15.    If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its

16

obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against Defendant in any prosecution.

### Restitution and Fines--Generally

16.     This plea agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

17.     Defendant agrees to make complete financial disclosure to the United States by truthfully executing a sworn financial statement (USAO-SDTX Financial Statement, Form OBD-500 or similar form) and providing it to the United States **prior to the entry of this Plea Agreement**. Defendant agrees to authorize the

17

release of all financial information requested by the United States, including but not limited to executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.   Defendant understands and agrees that any false information in any form that Defendant provides to the United States could result in additional prosecution of Defendant.

18.   Defendant agrees to take all steps necessary to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and signing any other documents necessary to effectuate such transfer.   Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States.

19.   Defendant understands that restitution and fines are separate aspects of sentencing and are separate obligations.

**Restitution**

20.   Defendant agrees to pay restitution of Three Hundred Twenty-Four Thousand Six Hundred Dollars ($324,600) to the victims regardless of the count of conviction.   Defendant stipulates and agrees that as a result of his criminal conduct,

the victim(s) incurred a monetary loss of Three Hundred Twenty-Four Thousand Six Hundred Dollars ($324,600).   Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate the victim(s) and that it is the Court that determines the amount of restitution that each defendant owes. Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court.

**Fines**

21.   Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment.   Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

**Complete Agreement**

22.   This written plea agreement, consisting of 23 pages, including the

19

attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant and Defendant's counsel.   No promises or representations have been made by the United States except as set forth in writing in this plea agreement.   Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

23.    Any modification of this plea agreement must be in writing and signed by all parties.

Filed at ____Houston____, Texas, on ____October 18____, 2022.

_____
Defendant

Subscribed and sworn to before me on ____October 18____, 2022.

NATHAN OCHSNER
UNITED STATES DISTRICT CLERK

By:    _____
Deputy United States District Clerk

20

APPROVED:

JENNIFER B. LOWERY
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF TEXAS

By: _____          _____
    Belinda Beek                        Cordt Akers
    Adam Goldman                        Attorney for Octavian Ocasio
    Assistant United States Attorneys

21

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. H-21-272-S** |
| | § | |
| | § | |
| **OCTAVIAN OCASIO** | § | |

## PLEA AGREEMENT - ADDENDUM

I have fully explained to Defendant his rights with respect to the pending Superseding Indictment. I have reviewed the provisions of the United States Sentencing Guidelines Manual and Policy Statements, and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the Court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____
Cordt Akers
Attorney for Defendant

_____  10/18/22
Date

22

I have consulted with my attorney and fully understand all my rights with respect to the Superseding Indictment pending against me. My attorney has fully explained and I understand all my rights with respect to the provisions of the United States Sentencing Guidelines Manual and Policy Statements which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement, and I voluntarily agree to its terms.

_____          _____
Octavian Ocasio                                    10/18/22
Defendant                                          Date

23